UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| CAROL S. FRANTZ, | ) |
|                     **Plaintiff,** | ) |
| v. | ) |
| | ) Case No. 08-2273 |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
|                     **Defendant.** | ) |

# ORDER

In January 2008, Administrative Law Judge (hereinafter "ALJ") James Gildea denied Plaintiff Carol Sue Frantz's application for social security disability insurance benefits. The ALJ based his decision on findings that Plaintiff was able to perform her past relevant work and that, in the alternative, Plaintiff could perform a significant number of jobs available in the national economy.

In November 2008, Plaintiff filed a Complaint for Judicial Review (#3) against Defendant Michael Astrue, Commissioner of Social Security, seeking review of the ALJ's decision to deny Plaintiff social security benefits. In May 2009, Plaintiff filed a Motion for Summary Judgment or Remand (#12). In July 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#16). After reviewing the administrative record and the parties' memoranda, this Court **DENIES** Plaintiff's Motion for Summary Judgment or Remand **(#12).**

### I.  Background
### A.  Procedural Background

Plaintiff applied for social security benefits in September 2004, alleging disability beginning August 1, 2004. The Social Security Administration denied her application initially and upon reconsideration. She appealed and the ALJ held a hearing in November 2007 at which Plaintiff and a vocational expert, Bob Hammond, testified. Plaintiff was represented by counsel at the hearing. In January 2008, the ALJ denied Plaintiff's application for social security

benefits based on findings that Plaintiff is capable of performing her past relevant work, and in the alternative, could perform a significant number of jobs available in the national economy. In July 2008, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently appealed the decision by filing a complaint pursuant to 42 U.S.C. § 405(g) in November 2008. Plaintiff seeks an outright reversal. In the alternative, she asks the Court to remand the case for reconsideration.

The parties have consented to the jurisdiction of the United States Magistrate Judge.

### B.  Factual Background

Plaintiff previously worked as a dishwasher, line assembler, and most recently, as a hostess at Denny's Classic Diner. Plaintiff testified that she stopped working in March 2005 after working two years as a hostess. She stated that she quit because she could not tolerate her ankle, knee, back, and shoulder pain. Plaintiff also sought medical assistance for her depression and anxiety issues, stemming from the death of her husband two years earlier and the responsibility of caring for her twenty-year-old daughter who is mentally handicapped. Plaintiff has taken prescription medication in the past and at the time of hearing was taking Celexa due to shoulder pain, arm pain, and an adjustment disorder. Plaintiff testified that she did not take other prescription medications or undergo x-rays, citing lack of funds as prohibiting her from doing so.

The ALJ stated that Plaintiff has severe impairments including spinal disorder and arthritis of the left shoulder, left knee, and left ankle. He stated that Plaintiff has the residual functional capacity (hereinafter "RFC") to perform light work except no climbing ladders, ropes, or scaffolds, and only occasionally climbing ramps and stairs; she is limited to occasional balancing, stooping, kneeling, crouching, or crawling; and she is limited to only occasional reaching with her left arm and she should avoid concentrated exposure to hazards.

## II. Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Commissioner of Social Security as to any fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's decision. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

The Court gives considerable deference to the ALJ's credibility finding and will not overturn it unless the plaintiff can show that those findings are patently wrong. *Urban v. Sullivan*, 799 F. Supp. 908, 912 (C.D. Ill. 1992).

## III. Discussion

Plaintiff argues that the ALJ's January 2008 decision contains the following errors: (1) the ALJ's RFC finding is not supported by substantial evidence; (2) the ALJ erred by finding Plaintiff not credible; and (3) the ALJ's findings at Steps Four and Five were erroneous and unsupported.

### A. RFC

Plaintiff first argues that the ALJ erred in his RFC determination because he (1) failed to give due weight to medical records of treating physicians; (2) should have obtained a Medical Source Statement (hereinafter "MSS"); (3) failed to take into account the effects of Plaintiff's obesity on her other impairments; (4) acted as an amateur doctor when he concluded that Plaintiff's depression and anxiety were not severe; and (5) failed to perform a mental RFC.

Regarding Plaintiff's first argument, after reviewing the evidence and the parties' briefs, the Court concludes that the ALJ considered the relevant medical evidence in the case and was sufficiently specific as to why he relied on certain pieces of medical evidence in the record. 20 C.F.R. § 404.1527(d)(2); SSR 96-8p.  The ALJ explained that he gave more weight to x-ray interpretations by Dr. John Sellett because other medical records from treating physicians were not based on objective tests such as x-rays, MRIs, or CT scans.  (R. 21.)  For these reasons, the Court cannot conclude that the ALJ failed to explain his decision or give proper weight to records from other treating physicians.

Plaintiff next argues that the ALJ erred when he did not request an MSS.  Plaintiff contends that relying on the State agency physician's review was incorrect, and that the ALJ should have requested an MSS from the treating physicians.  However, Plaintiff bears the initial burden of presenting medical evidence of her impairment. *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008); 20 C.F.R. § 404.1512(a).  Furthermore, because Plaintiff was represented by counsel, the ALJ may presume that she presented her best case. *See Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987).  The ALJ is not required to request an MSS unless evidence is inadequate to determine whether the Plaintiff is disabled.  20 C.F.R. § 404.1512(e); *see, e.g., Skinner v. Astrue,* 478 F.3d 836, 843-44 (7th Cir. 2007) (holding that the ALJ did not err by failing to request an MSS because the evidence in that case was adequate to determine whether the claimant was disabled and the ALJ's "decision not to obtain an MSS or further information . . . did not render the record incomplete").  Here, the ALJ explained his reasoning for relying on the reviewing physician's opinion and supported his conclusion with medical evidence in the record.  Based on that explanation, this Court cannot conclude that the ALJ erred by failing to obtain an MSS. *See Kendrick v. Shalala*, 998 F.2d 455, 457 (7th Cir. 1993) ("[I]t is always possible to do more.  How much evidence to gather is a subject on which district courts must respect the [Commissioner's] reasoned judgment.").

Next, the ALJ acknowledged Plaintiff's obesity in the decision and also referred to comments by Dr. Hima Atluri regarding Plaintiff's obesity. (R. 21.) Additionally, the State agency physician noted Plaintiff's obesity when she assessed her RFC, and the ALJ took this into account. In order to account for the effects of obesity the Seventh Circuit court has indicated that it is sufficient if an ALJ indirectly factors it into the decision. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("[T]he ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions."). Here, the ALJ acknowledged Plaintiff's obesity in his decision and relied on the opinions of the reviewing physician and Dr. Atluri. Thus, the ALJ adequately considered the effects of Plaintiff's obesity.

Finally, Plaintiff's arguments regarding mental limitations are also unavailing. Plaintiff contends that the ALJ relied only on the State agency physician's review of Plaintiff's health, and acted as an amateur doctor when he did not account for Plaintiff's mental limitations in the RFC. These arguments are unpersuasive on two grounds. First, by asserting that the ALJ relied on the State physician's review of Plaintiff's health, Plaintiff undermines her argument that the ALJ acted as an amateur doctor. Second, no evidence in the record documents mental limitations that impair Plaintiff's ability to work. The record shows that Plaintiff complained to her doctors of psycho-social issues, but no doctor diagnosed her as suffering from a mental impairment (R. 22.) The record does note use of the medication Zoloft (R. 211-16), current use of the prescription drug Celexa (R. 217-18), a discussion with a nurse practitioner regarding free counseling (R. 211), and a suggestion by Dr. Randall Megeff that Plaintiff bring her mentally-handicapped daughter in for an appointment so that Dr. Megeff could address some of Plaintiff's psychological stressors (R. 213.) However, there is no evidence that Plaintiff followed up on the free counseling or the suggested appointment with Dr. Megeff. (R. 22.) Additionally, the Celexa seems to have helped improve her symptoms. (R. 22, 218.) In the absence of evidence that a mental impairment affects Plaintiff's ability to work, the ALJ is not required to include mental limitations in the RFC. *See Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir. 2008).

For the reasons explained above, the Court cannot conclude that the ALJ erred when determining Plaintiff's RFC.

## B. Credibility

Plaintiff next argues that the ALJ wrongly assessed her credibility because (1) he failed to account for her inability to pay when concluding that Plaintiff took no strong pain medications; (2) he dismissed Plaintiff's claims due to lack of objective evidence, ignoring the only objective testing that Plaintiff was able to afford; (3) he improperly concluded that Plaintiff's daily activities undermined the credibility of her allegations; (4) he indicated that Plaintiff's continued employment at Denny's after her initial injury was inconsistent with her allegations, yet her part-time schedule actually supported claims that health problems hindered her ability to work; and (5) he did not consider obesity, the effects of pain on Plaintiff's mental condition, or her mental impairments when assessing Plaintiff's credibility.

Defendant responds that Plaintiff had opportunities to treat her alleged health impairments at limited costs, and on more than one occasion failed to do so. Plaintiff refused at least one steroid injection because she did not like the idea of a shot or injection. (R. 172.) She also did not follow up on referrals by her doctors for free health care offered by various medical entities in the area, and failed to follow up on Dr. Megeff's suggestion that she and her daughter both come in for an appointment so that Dr. Megeff could address Plaintiff's primary stressors. (R. 213.) Defendant claims that failure to take advantage of referrals for free medical care or to follow suggestions by her doctors illustrates that Plaintiff's responses to different forms of treatment have little to do with her insurance or financial situation.

Additionally, Defendant contends that the ALJ's assessment of objective medical evidence supports his finding that Plaintiff's arthritis did not severely limit her ability to work. In 1997, Plaintiff broke her ankle and underwent surgery. Following the procedure, x-rays were taken and the treating physician, Dr. Robert A. Gurtler, reported that the results "really look[ed] good." (R. 179.) On two different occasions, Dr. Sellett indicated that the 2004 x-ray of Plaintiff's left knee looked normal. (R. 172-73.) And finally, in September of 2005,

Ms. Bollero, Plaintiff's nurse practitioner, saw Plaintiff at the hospital for abdominal pain. The record from that occurrence states that all testing done during Plaintiff's stay produced normal results. (R. 214.) This evidence supports the ALJ's statement that Plaintiff's claims of disability are not consistent with the objective medical evidence.

When evaluating an ALJ's credibility determination, courts give great deference to the ALJ's assessment because of his ability to see and hear witnesses who testify at the trial. *Sims v. Barnhart*, 442 F.3d 536, 537-38 (7th Cir. 2006). Therefore, courts will generally not disturb an ALJ's credibility determination as long as it has some support in the record. *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993). It is only when an ALJ's decision is entirely without explanation or support that this Court will declare it to be "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

As an initial matter, the Court finds troubling the ALJ's statement that "Plaintiff means do not appear to be so constrained that she is not able to afford stronger pain medications" (R. 22) because it calls into question Plaintiff's financial situation without any substantiation. Such an evaluation of Plaintiff's means without further explanation or reference to evidence impedes this Court's ability to review the ALJ's credibility assessment. Nevertheless, in light of the ALJ's overall explanation for his assessment, the Court concludes that this statement does not constitute grounds for remand.

In the decision, the ALJ provided support for his credibility determination. The ALJ relied on objective medical evidence to conclude that Plaintiff's arthritis did not severely limit her ability to work. (R. 22.) The ALJ supports this statement with reference to Dr. Atluri's examination of Plaintiff's hip, which indicated normal findings and the fact that Plaintiff is not taking any prescription medication for the arthritis pain. The ALJ also stated that Plaintiff's activities are inconsistent with her claims, noting that Plaintiff was able to cook, clean, leave her home to shop or visit her other daughter, and care for herself and her mentally-disabled daughter. (R. 21-22.) In light of the deferential standard for reviewing an ALJ's credibility assessment, the Court cannot conclude that the ALJ's assessment is patently wrong.

## C. Step Four and Step Five

Plaintiff next argues that the ALJ erred at Step Four because he incorrectly relied on the VE's testimony when the VE did not account for the requirement of constant reaching in the *Dictionary of Occupational Titles'* (hereinafter "DOT") definition of Plaintiff's past employment as a hostess, a fact that precludes Plaintiff from being able to perform her past relevant work. At Step Five, Plaintiff argues that (1) the ALJ failed to provide accurate hypotheticals questions; and (2) the ALJ improperly found that Plaintiff could perform a significant number of jobs.

Because the ALJ continued his evaluation to Step Five, the Court need not consider Plaintiff's Step Four arguments. *See Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error review).

At Step Five, Plaintiff first contends that the ALJ's hypothetical questions were incomplete because he did not take into account all of Plaintiff's symptoms and impairments, compromising the ALJ's ability to rely on the VE's testimony as substantial evidence. This Court concluded previously that the RFC findings of the ALJ were not incorrect. Because the RFC was not improper, the ALJ's hypothetical questions were also adequate.

Plaintiff's argument that the ALJ improperly found that he could perform a significant number of jobs apparently challenges the VE's testimony. The VE testified that a hypothetical individual with Plaintiff's age, education, work experience, and RFC could perform the requirements of work as a cafeteria attendant, escort vehicle driver, and surveillance system monitor. The ALJ relied on this testimony when he concluded at Step Five that Plaintiff could perform jobs that exist in significant numbers in the national economy.

Plaintiff contends that the VE's testimony conflicts with the DOT as to the cafeteria attendant job and escort vehicle driver based on Plaintiff's purported inability to reach. Even assuming that Plaintiff's objections to these jobs are correct, her only objection to the surveillance system monitor job is that it is listed on O*Net as being a semiskilled position. Plaintiff acknowledges that it is currently listed in the DOT as an unskilled position.

Current law requires the VE's testimony to be consistent with the DOT, not the O*Net, or the VE must explain the discrepancy. *See* SSR 00-4p. Here, Plaintiff does not contend that the VE's testimony regarding the surveillance system monitor job is inconsistent with the DOT. Accordingly, the ALJ was entitled to rely on the VE's testimony related to that job. *Jones v. Shalala*, 10 F.3d 522, 526 (7th Cir. 1993).

Plaintiff also contends that 5,400 does not constitute a significant number of jobs. The Court disagrees. In *Liskowitz v. Astrue*, the Seventh Circuit court noted that as few as 174 jobs has been deemed a "significant number" and that it is well-established that 1,000 jobs constitutes a "significant number" of jobs. *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009). Thus, even if the VE erred regarding the other jobs, that error was harmless in light of his testimony that there are 5,400 surveillance system monitor jobs available in the national economy that the hypothetical individual could perform. *See Keys*, 347 F.3d at 994-95 (applying harmless error review to ALJ's determination). As a result, the Court concludes that the ALJ satisfied the Step Five requirement that the ALJ must demonstrate that Plaintiff can do other work that exists in significant numbers in the national economy.

### IV. Summary

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Summary Judgment or Remand **(#12).**

ENTER this 16th day of July, 2010.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE
